UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MEYERS DIVISION

Martha Bauer,

Plaintiff,

v. Case No. 2:13-cv-00850-SPF-DNF

Federal Deposit Insurance Corporation, as Receiver for First Community Bank of Southwest Florida,

Defendant.

**AFFIDAVIT OF PLAINTIFF MARTHA BAUER**

Martha Bauer, after first being duly sworn on oath, attests as follows.

1. At the time of the accident in question, I worked as a paralegal for a law firm, which was located next to the First Community Bank of Southwest Florida ("the Bank.") Per an agreement between the Bank and the law firm, the law firm was allowed to use a certain number of parking spaces in the Bank's parking lot. I was one of the law firm employees who were required to park in the Bank's parking lot.

2. On March 22, 2011, I was walking to my car in the Bank's parking lot, when the asphalt under one of my feet broke apart and collapsed, causing me to fall violently forward onto the asphalt and onto my bare knees. The next day, I went to the accident site, took pictures as attached to my expert's affidavit, and took the piece of the asphalt which had collapsed and broken free of all connection to the rest of the asphalt. In pictures the Bank

or CNA later took of the accident site, as later produced by the FDIC in discovery (Exhibit 3 hereto), this collapsed spot is where there is now a hole in the asphalt. The pictures also show that the front portion of this hole, where the front of my foot had been, was also collapsed, but not entirely broken free from the rest of the asphalt. I have admitted and continue to admit there was no hole in the asphalt where I stepped at the time of the accident. I did not step into a hole or onto one of the cracks in the asphalt. Instead, the asphalt collapsed under my foot. The hole was created by this collapse.

3. Another one of the law firm's employees was a witness to the fall. As I was getting myself together, I noticed one of the Bank's employees going to her car in the Bank's parking lot, and I waved her down and informed her of what had happened and asked her to inform the Bank Manager. This bank employee was nearby and may have also witnessed the fall. The next day, I reported the injury to the Bank's Manager.

4. Unfortunately, the fall turned out to be a serious matter for me. After the shock of the accident had worn off, I experienced pain in my knees, ankle, back, hands, wrists and shoulders. I hoped that my condition would improve, and went through extensive physical therapy, with multiple knee injections and other treatments, but my condition did not improve. One factor behind this apparently was that, not long before the accident in the Bank's parking lot, I was diagnosed with and survived breast cancer and had undergone treatments which can weaken one's body and resistance to injury. My doctor explained that there was swelling behind my kneecaps, along with other possible problems, and that this swelling was not disappearing as we had hoped it would. I had also been involved in two major car accidents about ten years before, and the fall exacerbated the prior injuries to my back and shoulders. Eventually, I had surgery on my

ankle as a result of the fall, which was a painful experience and left me with a permanent scar and on-going pain and diminished mobility. I incurred over $60,000 in medical treatment, extensive physical therapy and surgery, substantial pain and suffering and partial permanent disability as a result of my fall in the Bank's parking lot. Although I had coverage for my medical treatments under my husband's health insurance (he is retired from the air force, and has substantial medical issues, including two heart attacks and recent surgery), I have received notice from this insurer that I need to pay them back about $10,000 for the treatments I received due to the accident in the Bank's parking lot. I am uncertain whether more contribution might be asked of me. I also have had another lien of about $17,500 imposed on me, and there may be more to come. I also had to pay substantial deductibles and out-of-pocket expenses due to my injuries.

5. My injuries, and issues which arose regarding my injury situation, also resulted in my law firm terminating my employment. I remain unemployed. My husband and I are people of modest means. The FDIC's motion, and the recent withdrawal of my prior counsel, has imposed substantial costs and burdens on me.

6. Returning to 2011, after I had filed my claim with the Bank, the Bank informed me that it was submitting my claim to their liability insurance carrier, CNA.

7. Shortly after the asphalt in the Bank's parking lot collapsed under my step, I took photographs of the area in question. Some of these photographs are attached to the report of the expert my new counsel retained for me to give us his opinion on the condition of the asphalt in question, and why it had broken apart and collapsed under my step. My

counsel asked me about my weight, and I informed him that I am 5'9" inches tall and approximately 160 lbs.

8. Sometime after the accident, CNA asked me to provide them with a recorded statement. I agreed, and on October 11, 2012, CNA took my recorded statement. My prior counsel asked the FDIC, in a document request, for this recorded statement. At first the FDIC claimed that it did not have this statement, but, after my counsel persisted, the FDIC produced this Recorded Statement, which is attached hereto as Exhibit 1. The recording appears to have been inaudible, or the transcription bad, but the Statement nonetheless provides some idea of the information I willingly provided to CNA. I also provided CNA with medical records and any other documents or information they asked for.

9. After not hearing anything from the Bank or CNA for many months after CNA took my recorded statement, my prior counsel sent to CNA a nine-page settlement demand letter, which is attached hereto as Exhibit 2. I later provided this letter to FDIC as well.

10. After several more months had passed without CNA informing me or my counsel of any decision on my claim, my prior counsel informed the Bank and CNA of our intent to file a lawsuit against the Bank. My counsel informed me that he was in the process of doing so when I received notice on or about August 9, 2013, that the FDIC had taken over the Bank as Receiver.

11. The FDIC asked me to complete and file an on-line claim form, and I did so on August 18, 2013. The web site would not allow me to attach documents of the size I wished to attach, so, the next day, I called the FDIC, got their fax number, and faxed the FDIC a

letter, with 22 pages of documents, including my counsel's May 2013 letter to CNA, which explains my claim against the Bank in detail.

12. At about this time, I also talked to the FDIC about my medical records, which were quite lengthy given the extensive treatments and surgery involved. I had provided these to the Bank and to CNA quite some time before, and had kept sending CNA new medical records as I received them. On August 29, 2013, I received the e-mail message attached as Exhibit 10 hereto, in which the FDIC confirmed that it had located my medical records. The FDIC's contention in its motion that it did not have my medical records is false.

13. I also mailed the FDIC a package of documents, which included my counsel's May 2013 letter, setting forth the details of my claim. Exhibit 11 hereto is the Certified Mail Delivery Receipt I received, showing that the FDIC signed for this package on August 29, 2013.

14. The FDIC in its Motion for Summary Judgment clams that I failed to respond to an August 22, 2013 letter from the FDIC. This claim by the FDIC is untrue. I had faxed and mailed the requested documents to the FDIC, had talked to the FDIC about the files the Bank and CNA should already have had regarding my claim, and confirmed that they had located such files with my lengthy medical records in them.

15. I subsequently received a notice from the FDIC that my claim had been denied, but that I could commence a lawsuit against the FDIC within 60 days. The letter informed me that such lawsuit needed to be filed in Federal Court - my counsel and I had been planning on filing a state court lawsuit prior to the Bank being taken over by the FDIC.

16. Within this 60 day period, my prior counsel filed a lawsuit against the FDIC in Federal Court.

17. My prior counsel, a few months ago, had failed to appear for a deposition in ~~my~~ another (mb) case. Subsequently, he informed me that he had encountered personal issues and could not continue to represent me in my case, particularly given the strong opposition the FDIC was making to my claim.

18. I have now located and retained new counsel for my case, and seek to continue the case to trial if necessary.

Further Affiant Sayeth Naught.

[signature]
Martha Bauer

STATE OF FLORIDA)
)ss
COUNTY OF LEE)

SWORN TO and subscribed before me this 26th day of November 2014, by Martha Bauer, as N/A of N/A, who is personally known to me.

FERNANDO GOMES
Notary Public - State of Florida
My Comm. Expires Apr 30, 2016
Commission # EE 193990
Bonded Through National Notary Assn.

[signature]
Notary Public

Fernando Gomes
Print or type name of Notary

My Commission Expires: 04/30/2016
Notary Public