UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MEYERS DIVISION

Case No. 2:13-cv-00850-SPF-DNF

**Martha Bauer**,

    Plaintiff,

v.

**Federal Deposit Insurance Corporation, as Receiver for First Community Bank of Southwest Florida**,

    Defendant.

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE FDIC'S COUNTER-MOTION FOR RULE 11 SANCTIONS.

#### I. INTRODUCTION

The "FDIC's[1]" Rule 11 Counter-Motion is frivolous, has been filed without meeting the requirements of Rule 11[2], is simply another frivolous "fight fire with fire" litigation tactic by a

---

[1] Plaintiff puts the "FDIC" in quotes because, the FDIC is being represented by a lawyer who appears to be a CNA employee given his e-mail address of _____@CNA.com, and the Bank had tendered defense of the Claim to its liability carrier, CNA. Under Florida law and applicable insurance policy forms approved in Florida, when an insured tenders its defense to its liability carrier, "The insurance contract requires that the insured surrender to the insurance company control over whether the claim is settled….When the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured." *Berges v. Infinity Insurance Co.*, 896 So. 2d 665 (Fla. 2004) The FDIC in its Reply Memorandum has admitted that CNA is paying its cost of defense.

[2] The FDIC moved for Rule 11 sanctions in its Reply Brief. After Plaintiff pointed out the FDIC's error in doing so, instead of through a separate motion, the FDIC re-filed its Rule 11 motion separately, but without first complying with Rule 11's requirement to inform opposing counsel of the alleged Rule 11 violations, with an opportunity to withdraw the same. Plaintiff did comply with this procedure. *See Affidavit 2 of Gary Irwin*.

1

large insurance company seeking to overwhelm Plaintiff with litigation costs, and is grounds for additional Rule 11 sanctions against the "FDIC". The "FDIC's" Motions should be denied, with reasonable fees for Plaintiff.

The Rule 11 motions before the Court concern, at heart, the question of whether the FDIC's Motion for Summary Judgment for **F**ailure to **E**xhaust **A**dministrative **R**emedies ("FEAR" motion) is a good faith motion supported by law and fact, as required by Rule 11. Plaintiff contends that the FDIC's FEAR motion, and its Rule 11 counter-motion, are frivolous and in violation of Fed. R. Civ. P. 11 because they have no support in law or fact, and have been submitted for the improper purpose of harassment and needlessly increasing the cost of the litigation. Fed. R. Civ. P. 11.

The FDIC contends that if Mrs. Bauer had better responded to the FDIC's request for "a general description of the items you believe are necessary to properly evaluate your Claim[3]," by directly providing her Medical Records to the FDIC, instead of asking the FDIC to get such records as previously provided to CNA by Plaintiff's previous counsel, then it would have been able to perform the "proper" administrative claim evaluation it contends is required by dicta in an unpublished California case (and no other legal authority) which is distinguishable on the facts, and which recommends that the Plaintiff appeal, given the lack of any statute, case or FDIC administrative rule or regulation supporting the Court's unprecedented ruling.[4]  The FDIC asks this Court to enact into law the FDIC's unprecedented theory that lawsuits against the FDIC are barred unless the FDIC has performed an undefined "proper" administrative exhaustion, despite

---

[3] FDIC Memorandum in Support of Motion for SJ, Exhibit 3.
[4] In that case, the Plaintiff failed to file a Proof of Claim, although he had filed a pre-Receivership lawsuit. (Ninth Circuit Rules on this differ from the rules in the Elevenh Circuit).

2

U.S. Supreme Court and U.S. Court of Appeals Eleventh Circuit rulings that only Congress, and not Courts, have the power to create administrative exhaustion requirements.

The FDIC then contends that it was prevented from performing the allegedly required "proper" evaluation of Plaintiff's claim because Plaintiff asked the FDIC to obtain her Medical Records from CNA, when, according to the FDIC, it had no obligation to do so. Further, the FDIC contends that it had no obligation to inform Plaintiff that the FDIC refused to obtain documents or information from its liability insurer, CNA. On top of this "house of cards," the FDIC contends that Plaintiff should have understood that when the FDIC informed her that it had obtained her "Medical Records" it did not really mean that[5], and that Plaintiff had no right to rely on the FDIC's recitation to Plaintiff of Federal law that she had a right to file a lawsuit within 60 days. The FDIC's theory goes on to speculate that the lack of Medical Records was the only thing which prevented the FDIC from conducting a "proper" review, even though the FDIC admits that it never even obtained the Claims File from CNA, never obtained settlement authority from CNA, never obtained an expert's report on liability (until it first did so for its Reply Brief), never scheduled an Independent Medical Exam, etc.

Plaintiff contends that the FDIC's "proper" exhaustion theory is frivolous, does not have a good faith basis in law or in fact, and was filed for the "improper purpose… to harass...or needlessly increase the cost of litigation." Fed. R. Civ. P. 11.

---

[5] THE FDIC contends that by "Medical Records" it meant "medical bills." The FDIC does not explain why Plaintiff should have understood that. "Medical Records" are defined as "chronological written account of a patient's examination and treatment that includes the patient's medical history and complaints, the physician's physical findings, the results of diagnostic tests and procedures, and medications and therapeutic procedures". http://medical-ictionary.thefreedictionary.com/medical+record defines "Medical Record(s)" Florida law refers to medical bills as "statements and bills for medical services rendered…." Fl. Stat § 726(5)(d).

Plaintiff contends that the likely scenario behind the scenes is that the FDIC simply decided that the type of claim at issue was not suitable for administrative resolution, and exercised its right to end such review in favor of litigation (if Plaintiff decided to pursue such right.) In litigation, the cost of any further investigation would be borne by CNA, and the type of work required to resolve the claim-expert reports, depositions, medical examinations, etc.- were best handled in litigation, with the assistance of CNA which is experienced in handling such claims, rather than by the FDIC at its own cost in administrative review.[6]

Indeed, under Florida law, the FDIC could not have settled Plaintiff's Claim without obtaining permission and authority from its liability carrier, CNA. *See, e.g., Berges v. Infinity Insurance Co.*, 896 So. 2d 665 (Fla. 2004). Accordingly, the FDIC has acted without a reasonable basis in law or fact by contending that it sought to engage in a "proper" review of Plaintiff's claim, but was prevented from doing so because Plaintiff asked the FDIC to obtain documents and information from its liability insurance carrier, to whom the Bank had tendered defense of Plaintiff's claim,

## II.  Analysis

The FDIC's FEAR Motion is inherently frivolous for the following key reasons.

---

[6] The FDIC admits in its Rule 11 motion that CNA had declined to resolve Plaintiff's Claim, and that Plaintiff informed the FDIC that her claim was to be filed in State Court the very day she was notified of the Receivership. *See Plaintiff's Reply Brief Exhibit 6 and 7.*

A. *It is undisputed that Plaintiff timely filed a Claim with the FDIC[7], and timely commenced this lawsuit in Federal Court*. THE FDIC Exhaustion of Administrative Remedies requirement as set forth in FIRREA, 12 U.S.C § 1821 *et seq.* requires no more.

B. The FDIC has waived its FEAR defense. It is undisputed that the FDIC represented to Plaintiff that its administrative review was concluded, and that Plaintiff had the right to file a lawsuit within 60 days. Plaintiff timely filed such lawsuit. FIRREA requires no more in order for this Court to have jurisdiction. The FDIC's argument that it is not subject to waiver defenses has been repeatedly rejected by 11th Circuit and US Supreme Court rulings. *See Plaintiff's Reply Brief and, e.g., Damiano v. FDIC*, 104 F.3d 328 (11th Cir. 1997).

C. The FDIC's argument that Plaintiff may have filed a timely claim, but it was not a "proper[8]" claim, is unsupported by FIRREA or by any case law precedent; the FDIC has not even submitted any FDIC administrative rules or regulations which support its unprecedented and frivolous "proper" exhaustion theory. The FDIC cites no case, precedential within the Eleventh U.S. Judicial Circuit[9], which holds that a Federal Court lacked jurisdiction, due to

---

[7] As part of the FDIC's effort to establish that it lacked sufficient information to rule on Plaintiff's claims, it has submitted a blank "Proof of Claim" Form, rather than the actual FDIC Proof of Claim Form Plaintiff completed on-line at the FDIC's web-site. *FDIC Memorandum in Support of Motion for Summary Judgment, Exhibit 2*. Plaintiff's August 29, 2013 letter to the FDIC refers to her August 18, 2013 on-line FDIC Proof of Claim Form, filed at www2.fdic.gov.NDC/ Web, with a description of her claim. Plaintiff's Reply Brief Exhibit 7. Plaintiff was unable to print the Proof of Claim Form she completed, at the FDIC's request, on its web-site, and does not have a copy.

[8] THE FDIC's term; Plaintiff has referred to the FDIC's theory as the theory of "complete exhaustion." Whatever one calls the FDIC's novel theory, it is not required by FIRREA, the FDIC has not provided any FDIC administrative regulation requiring such exhaustion, and such theory has never been adopted by any court in the 11th Judicial Circuit.

[9] THE FDIC relies solely on dicta from an unpublished California District Court case, distinguishable on the facts, and which admits that the court's ruling is unsupported by any precedent and is so uncertain that the Court recommends an Appeal. Relying on cases from other

failure to exhaust administrative remedies, where the Plaintiff had filed a timely claim with the FDIC, and timely filed a lawsuit when the FDIC denied the Claim.

D. As the key part of the FDIC's argument that "proper" exhaustion (undefined by the FDIC, or by any statute, court ruling or administrative regulation) is required, it contends that Plaintiff failed to provide Medical Records. The FDIC argues that it had no obligation to comply with Plaintiff's request that the FDIC obtain her lengthy (277 pages with nine page cover letter) Medical Records from CNA, even though Plaintiff attached a letter from CNA to her counsel with the CNA case number and full CNA contact information. The FDIC also argues that it had no obligation to inform Plaintiff that it was unwilling to obtain documents or information from the failed Bank's liability carrier, CNA, despite her request.[10] The FDIC also argues that Plaintiff should have understood when it informed her that it had located her "Medical Records" that the FDIC didn't really mean "Medical Records."

The United States Court of Appeals for the 11th Circuit has previously admonished the FDIC for attempting to obtain dismissal of claims through frivolous FEAR motions, based on "ambush" tactics and misrepresentations. *See, e.g.*, *Damiano v. FDIC*, 104 F.3d 328 (11th Cir. 1997).

---

circuits in this area is risky because there are divisions between the Circuits, as yet unresolved by the US Supreme Court, on details of the FIRREA exhaustion of administrative remedies requirements. *See, e.g. Damiano v. FDIC*, 104 F.3d 328 (11th Cir. 1997)(Adopting rule, contrary to some of the other Circuit Courts of Appeal, that FDIC exhaustion of administrative remedies is not required for pre-Receivership lawsuits.)

[10] The United States Court of Appeals has held that it would be a "miscarriage of justice" to allow the FDIC to avoid addressing a claim on the merits when the FDIC had misled Plaintiff as to exhaustion of administrative remedies requirements.

Contrary to the FDIC's arguments, both the FDIC, as Receiver, and CNA, as insurer, would have various duties if there was such a thing as "proper" exhaustion as the FDIC claims. If the FDIC were to decide to get involved in trying to evaluate and settle an insured personal injury liability claim, it would need to comply with Florida insurance laws requiring good faith handling of such claims.[11] *See, e.g., Berges v. Infinity Insurance Co.*, 896 So. 2d 665 (Fla. 2004). One such duty would be for CNA to provide the FDIC with its Claims File, and for the FDIC to obtain and examine the critical Claims File. *See, e.g., Allstate Indem. Co. v. Ruiz, 899 So. 2d 1121, 1129-30 (Fla. 2005)*(An insured has the right to obtain its insurer's Claims File upon demand)*; Dunn v. Am. Family Ins.*, 251 P.3d 1232, 1238 (Colo. App. 2010) ("Defendant [insurance carrier] had a duty to promptly and effectively communicate with anyone it was reasonably aware had or legitimately needed information pertaining to the handling of plaintiffs' claim."); *Prisco Serena Strum Architects, Ltd. V. Liberty Mutual Insurance Company*, Case No. 94 C 5716, 1996 U.S. Dist. Ct. LEXIS 2216 at 1 (N/D. Il. 2/26/96, aff'd, 126 F.3d 886(7th Cir. 1997)("The claim File is a unique and contemporaneously prepared history of the Company's handling of the Claim…the need for information in the file is not only substantial, it is overwhelming.").

---

[11] *See, e.g., Berges v. Infinity Insurance Co.*, 896 So. 2d 665 (Fla. 2004)("The insurance contract requires that the insured surrender to the insurance company control over whether the claim is settled….When the insured has [tendered its defense to its insurance carrier and thus] surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so. Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith.")

Full briefing of Florida and Federal law on Receiver duties and Insurer duties is beyond the scope of this Reply Memorandum. However, Plaintiff will cite one example of the extensive case law concerning duties insurers owe to their insureds with respect to the handling of personal injury claims such as Plaintiff's claim. In *Berges v. Infinity Insurance Co.*, 896 So. 2d 665 (Fla. 2004), the Court held that "The duty of good faith obligates an insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid the same."). Applying *Berges* to the FDIC's FEAR Motion, it is clear that CNA had an obligation to inform the FDIC, upon being notified of the Receivership, of the cases it had open for the failed bank, the status of these cases, settlement opportunities and any steps the FDIC, as its insured, might take to avoid loss, as discussed in *Berges, supra*. This obligation required CNA to contact the FDIC as its new insured with respect to Plaintiff's Claim, and to share pertinent information with the FDIC. The FDIC, in turn, was required, under Florida Insurance Law, to consult its (the failed Bank's) insurance carrier with respect to pertinent information which CNA had developed regarding Plaintiff's Claim, and any settlement offers and/or opportunities. If CNA didn't contact the FDIC, and the FDIC didn't contact CNA, this provides no good faith basis for the FDIC's FEAR motion, and instead reflects that both CNA and the FDIC were negligent.[12] *See, e.g., Berges v. Infinity Insurance Co.*, 896 So. 2d 665 (Fla. 2004). If the FDIC had any genuine interest in administratively reviewing Plaintiff's case, it would have, at minimum, needed to consult with CNA as to any liability coverage for any settlement offer.

---

[12] *See, e.g. , Damiano v. FDIC*, 104 F.3d 328 (11th Cir. 1997)(Court will not allow "miscarriage of justice" and allow FDIC to "ambush" claim through FEAR argument based on a failure to inform Claimant of alleged exhaustion of administrative remedies requirements.)

Plaintiff's position is not that the FDIC was necessarily required to do this and become subject to legal requirements applicable to good faith handling of an insured liability claim. The relevant case law refers to the FIDC administrative review process as the FDIC's "opportunity" to investigate.[13] The FDIC could have decided, and had the authority to decide, that it did not want to avail itself of such opportunity on the facts of this case. Instead, the FDIC can simply deny a claim, leaving Plaintiff 60 days to file a lawsuit. When the FDIC makes such a decision, however, it does not provide the FDIC with a good faith basis for claiming that Plaintiff failed to exhaust administrative remedies. ZZZ

For example, the FDIC could have concluded that it was not worth further administrative review of Plaintiff's personal injury Claim because the nature of the Claim, and the need for such things as expert reports, medical examinations and testimony, etc., was not suitable for FDIC administrative resolution, but was better resolved by its liability carrier CNA. The FDIC may have decided that further administrative review, at the FDIC's expense, was not a good use of FDIC resources since its defense costs in litigation would be covered by CNA, and CNA had greater expertise than the FDIC with respect to handling insured personal injury claims.

In any event, the FDIC could, as it did, simply deny a claim and allow it to be resolved through litigation. However, when the FDIC decides to disallow a claim[14], this does not give

---

[13] The FDIC's contention that Plaintiff fails to cite any case law imposing duties on the FDIC is a disingenuous argument because there is no case law supporting the FDIC's proper exhaustion theory in the first place, and therefore no case law detailing the FDIC's duties pursuant to the FDIC's unprecedented theory.

[14] Despite the FDIC's argument that the language of its denial letter to Plaintiff has some special meaning unique to her case, this language is the standard language specified by statute when the FDIC decides to disallow a claim. See 12 U.S.C § 1821 (d)(3)(5)((D)(i). It does not mean, as the FDIC contends, that the FDIC had concluded that Plaintiff failed to provide adequate

rise to a good faith basis for a FEAR motion to dismiss. In essence, the FDIC's claim disallowance letter is proof that the claimant has exhausted her administrative remedies and can proceed to litigation if the claimant decides to do so within 60 days.

In sum, although the FDIC had the authority to end administrative review and allow the claim to be resolved in litigation instead, its decision do so does not give rise to a claim of failure to exhaust administrative remedies. Plaintiff filed a timely FDIC claim, and timely filed a lawsuit. That is exhaustion of administrative remedies under FIRREA. The FDIC not only fails to cite any statue or case law that "proper" exhaustion is required, but it also fails to cite any FDIC regulations setting forth what "proper" exhaustion would be if such a thing existed.[15]

In sum, leaving aside the lack of authority to support the FDIC's novel legal theory of "proper" exhaustion, if such "proper" investigation was required, it would seem to inherently require that the FDIC obtain and review the Claims File from CNA, as Plaintiff specifically requested that the FDIC do, and consult with CNA regarding its investigation, the facts of the case, any past settlement offers and/or opportunities, and whether it would fund any settlement offer. The FDIC's admission that it did none of these things shows that further administrative review was futile, and the next step was a lawsuit if Plaintiff decided to pursue her Claim.

---

information. Instead, the FDIC's letter is the standard statutory form which informs a claimant that the FDIC is disallowing the claim, but that the claimant can, if they disagree with the FDIC's determination, commence a lawsuit, within 60 days, against the FDIC, in Federal Court.
[15] The FDIC's Bank Closing Handbook does require the FDIC to contact counsel handling pre-Receivership claims for the failed Bank, and to determine what the claims consist of, etc.

E. The FDIC's FEAR motion is also frivolous because the FDIC was in "possession or control," as those terms are defined under Federal Law, of all of the documents and information which it alleges it lacked to perform the allegedly required "proper" investigation of Plaintiffs Pre-Receivership Claim. Such information was either provided to the FDIC directly by Plaintiff or was in the Claims File of the FDIC's liability carrier, CNA. The United States Court of Appeals for the Eleventh Circuit has repeatedly held that documents are within a party's "possession or control" whenever they either physically have the documents or have "the legal right to obtain the documents...upon demand…" *See, e.g., Searock v. Stripling*, 736 F. 2d 650 (11th Cir. 1984). The FDIC was CNA's insured with respect to Plaintiff's Claim and the FDIC had the legal right to "obtain upon demand" CNA's Claims File on Plaintiff's claim against the Bank/FDIC. *See, e.g., Allstate Indem. Co. v. Ruiz,* 899 So. 2d 1121, 1129-30 (Fla. 2005).

D. If the Court accepts the FDIC's contention, through its lawyer at____ **@CNA.com**, that it was not in contact with CNA during the FIDC administrative review process, then such review was plainly futile. The FDIC's review of an insured liability claim without consulting the liability carrier, would be like conducting a Mediation in an insured liability case without participation of the liability carrier-a futile endeavor. Again, the FDIC had the right to simply deny Plaintiff's claim, and let it proceed to a lawsuit, but it cannot allege a failure to exhaust administrative remedies based on a lack of claim documentation where such documentation was already in the "possession or control" of the FDIC as those terms are defined under Federal Law.

### III.     Specific Responses to key FDIC's Rule 11 allegations.

Plaintiff respectfully requests the opportunity to respond to a few examples of the many misrepresentations and concealments of fact in the FDIC's Briefs. Limitations on the length of this Brief, and a desire to avoid unnecessary waste of this Court's time, counsel Plaintiff to not address all of the FDIC's false contentions, but Plaintiff denies all of the FDIC's allegations and will discuss only some examples as to why Plaintiff's denies the FDIC's aspersions and accusations. The FDIC bears the burden of proof as to any factual assertions underlying its FEAR Motion and Rule 11 counter-motion.

(1) In the FDIC's Reply Brief, the FDIC wrote that "Plaintiff brought an action in 2006 for an injunction for repeat violence." *FDIC's Reply Brief in Support of Motion for Summary Judgment*, Page 4, ¶ 11. In response, Plaintiff claimed that the FDIC's statement is irrelevant to the issues before this court, is embarrassing and prejudicial, should be stricken, and has been included in the FDIC's Brief simply to harass her, in violation of Rule 11. Plaintiff asked the FDIC to remove this statement from its brief, or else face Rule 11 sanctions. The FDIC has refused to withdraw its statement regarding irrelevant alleged domestic violence. Instead of withdrawing this irrelevant and harassing statement as requested by Plaintiff, the FDIC's Rule 11 Memorandum contends that all it did was to "attach a document from the Lee County Circuit Court. This is a public record any one can obtain."

The problem with the FDIC's Rule 11 counter-motion argument is that it is untrue. The FDIC doesn't simply attach a list of cases as it claims, but expounds upon such cases in its Memorandum of Law. The FDIC's expounding upon these irrelevant and improper references is nothing but harassment, in violation of Rule 11. The FDIC's attachment of irrelevant unrelated cases involving Mrs. Bauer is also of no probative value to the issues before this Court and

12

could have been submitted for no other reason than to harass Plaintiff and needlessly increase the cost of litigation. Fed. R. Civ. P 11.

(2) In the FDIC's Memorandum in Support of its Motion for Summary Judgment, the FDIC contended that it had discovered Plaintiff's claim against the Bank "through State Court filings." Plaintiff pointed out that this was untrue as the FDIC had informed her that it had discovered her clam when it found the Bank's Claim File on her claim, as tendered to CNA for defense. The reason this makes a difference is that the truth of how the FDIC discovered Plaintiff's Claim reveals that the Bank had a Claim File on Plaintiffs Claim, which may have had material information within it about Plaintiff's claim, CNA's responses, etc.. The documents in this file may reveal that the FDIC had some or all of the information it alleges it lacked in order to perform a "proper" analysis of her caim and whether to settle it without litigation. Although the FDIC has withdrawn its contention and now admits that it had located the Bank's Claim File on Plaintiff's Claim, the FDIC has still refused to disclose the full contents of this file.

(3) The FDIC states, without citation to precedent, that the issue before the Court is "Was Plaintiff's Complaint filed before the Receivership of the failed Bank commenced?" This is not the issue before the Court; the FDIC's contention appears to have been submitted to obscure and confuse the legal issues before this Court. The FDIC's contention does, however, reveal that the FDIC is unsure what the basis is for its novel and unprecedented FEAR Motion.

The legal issue before the Court is whether the Court lacks jurisdiction, for failure to exhaust administrative remedies, despite Plaintiff timely filing a claim with the Receiver and timely filing a lawsuit in compliance with the FDIC's representation to her that she had a 60 day right to file such lawsuit.

Although the question of whether there was a pre-Receivership lawsuit is not the issue, Plaintiff respectfully submits that it is relevant that her claim is a pre-Receivership claim which the failed Bank had tendered to its liability insurer, CNA, and that CNA had conducted at least a partial investigation and had developed a substantial Claims File. All of this work, such as Plaintiff's Recorded Statement, Medical Records and correspondence, did not disappear once the FDIC became the Bank's Receiver. Further, under Florida law, once the Bank/FDIC tendered defense of Plaintiff's claim to its insurance carrier, CNA, the Bank/FDIC, "surrendered to the insurer all control over the handling of the claim." *Berges v. Infinity Insurance Co.*, 896 So. 2d 665 (Fla. 2004). The FDIC in its motion papers contends that CNA has nothing to do with the issues in this case, but Florida law makes it clear that the FDIC's contention is simply untrue.

(4) After accusing Plaintiff of "lying[16]" and stating to the Court that "The lying party should be sanctioned," the FDIC informs the Court that "The FDIC is unaware of Plaintiff's counsel's or Plaintiff's correspondence with CNA prior to or during the Receivership." *FDIC Reply Brief in Support of Motion for Summary Judgment, page 2, paragraph 3*. However, at page 3 of the FDIC's Memorandum in Support of Motion for Summary Judgment, the FDIC admitted that it had received "correspondence from the former First Community Bank of Southwest Florida's insurance carrier indicating that a claim had been set up." In Plaintiff's August 19, 2013 letter to the FDIC, *Plaintiff's Memorandum in Reply to FDIC Motion for Summary Judgment, Exhibit 6*, she referred to an "attached letter from CNA, the insurance carrier for the First Community Bank [which] is providing a defense on behalf of the Bank." This letter was

---

[16] Plaintiff has not accused the FDIC of "lying." The FDIC's use of that pejorative term is unprofessional and uncalled for. Plaintiff's counsel has practiced law for 30 years, starting with a US Court of Appeals clerkship, partnership at major law firms including a Wall Street based law firm, and service as Vice-President and Chief Litigation Counsel for American Express. He has an "A-V" rating, and has never before been accused of "lying" to a court.

correspondence from CNA to Plaintiff's prior counsel. In short, the FDIC plainly had at least one example of the correspondence between Plaintiff and CNA, contrary to the FDIC's representation to this Court otherwise.[17] Since the FDIC has misrepresented this fact to the Court, the FDIC should be sanctioned exactly as it admits it should be.

(5)    The FDIC contends that Plaintiff should be sanctioned because she claims that she submitted her Medical Records to the FDIC. Plaintiff has not made this contention, however. In her Affidavit, Reply Memorandum and Exhibits 6 and 7 thereto, Mrs. Bauer states that her prior counsel had submitted her lengthy Medical Records to CNA. She asked the FDIC to obtain these Medical Records from CNA. The FDIC denies ever obtaining Plaintiff's "Medical Records." In response, Plaintiff attached as Exhibit 5 to her Opposition Brief, an e-mail message to her from the FDIC in which the FDIC confirmed that it had located her "Medical Records." The FDIC did not inform Plaintiff that it refused to obtain such records from CNA as Plaintiff had requested. Plaintiff assumed, given the FDIC's use of the term of art "Medical Records," that the FDIC had contacted CNA as she had requested and had obtained her "Medical Records."[18]

---

[17] Plaintiff also contends that her submissions to the FDIC included her counsel's May 13, 2013 nine page long letter to CNA (without the attached photographs and 255 pages of Medical Records), describing her claim, and analyzing her Medical Records. (As to the lengthy Medical Records which had been attached to her counsel's letter, Plaintiff asked the FDIC to obtain those Medical Records from CNA, given their length and her difficulty in obtaining, reproducing and transmitting these lengthy Medical Records. *See Plaintiff's Memorandum in Opposition to the FDIC's Motion for Summary Judgment, Exhibits 6 and 7*.) The FDIC denies receiving this letter, but admits that a copy of this letter is in CNA's Claims file, along with 268 pages of attached documentation, of which 255 pages are Plaintiff's Medical Records.

[18] There was no dispute between Plaintiff and the FDIC regarding her itemized statements/bills for medical services rendered. Plaintiff sent these bills to the FDIC by fax and by certified mail, and the FDIC signed for receipt of these bills. The only issue involved the actual Medical Records themselves, which Plaintiff asked the FDIC to obtain from CNA given their length and her difficulty in obtaining, re-producing and transmitting these 255 pages of Medical Records.

(6)     In the FDIC's Reply Brief, it stated that "CNA offered a roughly estimated cost-of-defense settlement of $20,000." FDIC Reply Brief p. 3. ¶ 7. Plaintiff has objected to the FDIC's disclosure of confidential settlement negotiations, and asked the FDIC to withdraw this improper disclosure. The FDIC has refused to do so, and instead asserts in its Rule 11 Reply Brief that its disclosure was justified because Plaintiff's Reply Brief, without revealing anything about settlement negotiations, referred to a May 13, 2013 nine-page long (without attachments) letter from Plaintiff's counsel to CNA, which attaches Plaintiff's Medical Records, analyzes such Records and Plaintiff's claim, and makes an initial settlement demand in one sentence at the end of the nine-page long (without attachments) letter.

Plaintiff referred to this letter, without mentioning anything about a settlement demand, because she alleges that she sent it to the FDIC (without lengthy exhibits). Also, this letter attached and analyzed the Medical Records which the FDIC claims it never received or obtained; the copy of the letter in CNA's files confirms the FDIC's receipt of these Medical Records. The letter sets forth a complete analysis of Plaintiff's case. Plaintiff contends that if the FDIC wanted a more detailed analysis of her claims, this letter (Exhibit A hereto as redacted) was a good place to start. As there is, at the end of the letter, a settlement demand which Plaintiff had not mentioned in her Brief, Plaintiff is requesting to withdraw this letter, and is resubmitting a copy of this nine page long letter (without Exhibits) as Exhibit A hereto, with the one sentence at the end with a settlement demand redacted.

Plaintiff could go on and on about other examples of similar misrepresentations, inaccuracies and concealments of material facts in the FDIC's Briefs, but respectfully submits that the above examples establish Plaintiffs point. The core basis of Plaintiff's Rule 11 motion is simply that the FDIC's FEAR motion lacks a good faith basis in law or fact and has been submitted for the

improper purposes of harassment and needlessly increasing the cost of litigation. A secondary part of Plaintiff's Rule 11 Motion is that the FDIC, in support of its frivolous theory of "proper exhaustion," has misrepresented and concealed material facts, set forth irrelevant and scurrilous allegations and overall presented an inaccurate and intentionally ambiguous picture of the facts and applicable law.

### IV.    Conclusion

For all the reasons set forth above, Plaintiff respectfully requests that the FDIC's Rule 11 counter-motion be denied, and that Plaintiff be awarded her reasonable costs of responding to the FDIC's Rule 11 Motion and its frivolous FEAR Motion for Summary Judgment.


/s/ Gary Irwin
Gary Irwin
Fl. Bar # 18826
Gary Irwin & Associates, LLC
1415 Tiffany Lane, #1307
Naples, FL 34105
grirwinlaw@gmail.com
(305)490-2360

-and-

15735 17th Place N.
Plymouth, MN 55447
_____


Certificate of Service
I, Gary Irwin, FBN # 18826, attest that on,    December 22, 2014, I e-filed this Memorandum in Opposition to FDIC Motion for Rule 11 sanctions, with a copy to Defendant's counsel.
/s/ Gary Irwin

<u>Certificate of Font Size</u>

I, Gary Irwin, FBN # 18826, attest that this brief complies with this Court's Rules regarding font size and other requirements.

/s/Gary Irwin