UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARTHA BAUER,

       Plaintiff,

v.                             Case No:  2:13-cv-850-FtM-38DNF

FEDERAL DEPOSIT INSURANCE
CORPORATION,

       Defendant.

_____/

## ORDER[1]

This matter comes before the Court on Defendant's Motion to Dismiss or Motion for Summary Judgment (Doc. #25) filed on November 5, 2014.  Plaintiff filed a Response in Opposition (Doc. #33) on November 27, 2014.  Thereafter, Defendant requested (Doc. #42), and the Court granted (Doc. #44), leave to file a Reply.  The Court also granted Plaintiff the opportunity to file a Surreply.  Subsequently, Defendant filed a Reply (Doc. #46) on December 9, 2014, and Plaintiff filed a Surreply (Doc. #48) on December 16, 2014.  Thus, the Motion is ripe for review.

### Background

Plaintiff is a resident of Lee County, Florida.  (Doc. #7 at 1).  Defendant is a governmental entity charged with administrating the receivership of First Community Bank of Southwest Florida ("FCBSF"), a failed financial institution.  (Doc. #7 at 1-2).  On

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

March 22, 2011, Plaintiff was walking across FCBSF's parking lot when she slipped and fell.  (Doc. #7 at 2).  Because of her fall, Plaintiff suffered injuries to her knees, right ankle, wrists, and back.  (Doc. #7 at 3).  In treating her injuries, Plaintiff incurred over $60,000 in medical expenses.  (Doc. #7 at 3).  Moreover, Plaintiff suffered, and will continue to suffer, physical and mental pain and suffering.  (Doc. #7 at 3).  Based on the foregoing, Plaintiff brought a single-count Complaint against Defendant, as receiver for FCBSF, asserting negligence.  (Doc. #7 at 2-4).  Defendant now moves the Court for relief in two forms.  First, Defendant seeks to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction.  (Doc. #25 at 1-10).  Second, Defendant seeks an entry of summary judgment in its favor on the single count asserted in Plaintiff's Complaint.  (Doc. #25 at 10-14).

## Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction

### Legal Standard

The general rule under Fed. R. Civ. P. 12(h)(3) is that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Under a Rule 12(b)(1) motion, a claim may be challenged both facially and factually. *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999). Facial attacks "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true". *Id.* (punctuation omitted). Factual attacks, however, "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (punctuation omitted).

The Eleventh Circuit has instructed that "[i]n response to a factual attack, a court should dismiss the complaint for lack of subject matter jurisdiction where the federal claim

is clearly immaterial or insubstantial." *Id.* (punctuation omitted).  And the Court need not take the allegations in the complaint as true.  *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011) *cert. denied*, 132 S.Ct. 2380 (U.S. 2012). Rather, the Court may "independently weigh the facts and is not constrained to view them in the light most favorable to the non-movant." *Id.*

### Discussion

The Financial Institution Reform, Recovery, and Enforcement Act ("FIRREA") established the administrative framework for asserting a claim against a failed financial institution under the FDIC's receivership.  This framework tasks the FDIC with the responsibility of allowing or disallowing claims in accordance with certain requirements. 18 U.S.C. § 1821(d)(3)(A).  Explained in the simplest of terms, after taking a failed institution under receivership, the FDIC must initially publish a notice to all potential claimants.  This notice alerts potential claimants to present their claims, together with proof, by a certain date.  § 1821(d)(3)(B).  Once a timely claim is filed, a 180-day determination period begins, during which the FDIC evaluates the claimant's submission, chooses to allow or disallow the claim, and provides notice to the claimant of its decision. § 1821(d)(5)(A)(i).  Notably, the FDIC "may disallow any portion of any claim by a creditor . . . which is not proved to [its] satisfaction. . . ."  § 1821(d)(5)(D)(i).  If the FDIC disallows a claim, the claimant has sixty days to seek administrative review of the FDIC's decision or file suit in the district court where the failed financial institution is located.  § 1821(d)(6)(A)(ii).  But a district court lacks subject matter jurisdiction over litigation surrounding a post-receivership claim unless the claimant first exhausts FIRREA's

administrative remedies framework.  *Damiano v. F.D.I.C.*, 104 F.3d 328, 333 (11th Cir. 1997) (citations omitted).

Defendant seeks dismissal of Plaintiff's Complaint on the basis that the Court lacks subject matter jurisdiction over this action.  (Doc. #25 at 1).  In support, Defendant avers that, in accordance with the framework explained above, Plaintiff was required to exhaust FIRREA's administrative remedies before filing the instant action. (Doc. #25 at 2).  And to do so, Plaintiff was required to submit documentation that supported and substantiated her claim.  (Doc. #25 at 2).  Instead, Plaintiff submitted her claim with an array of documents that failed to provide any specific details regarding her injury.  (Doc. #25 at 3). After finding Plaintiff's submission to be inadequate, Defendant sent Plaintiff a formal Request for Additional Information, alerting Plaintiff that she needed to submit supplemental documentation that substantiated her claim.   (Doc. #25 at 4).

Plaintiff acknowledged Defendant's Request, but refused to submit the requested supplemental documentation.  (Doc. #25 at 2).  Instead, Plaintiff relied on the fact that she had submitted extensive documentation, including over two hundred pages of medical records, to FCBSF's personal injury liability insurance carrier, CNA, prior to Defendant taking FCBSF under receivership. (Doc. #34-1).  But because Plaintiff failed to submit the same documentation, or any other documentation, Defendant issued Plaintiff a formal Notice of Disallowance of Claim.  (Doc. #25 at 5). Defendant now moves to dismiss this action, averring that Plaintiff's failure to submit proof illustrates that Plaintiff failed to exhaust FIRREA's administrative remedies.   (Doc. #25 at 6).  As a result, Defendant asserts that this Court lacks subject matter jurisdiction over this action.  (Doc. #25 at 10).

Plaintiff adamantly disagrees with Defendant's failure to exhaust argument.  She asserts that the record clearly reflects that she exhausted her FIRREA administrative remedies by submitting the initial Proof of Claim Form.  (Doc. #33 at 11).  To that end, Plaintiff argues that Defendant fails to present the Court with any precedent holding that a claimant must do more than submit a Proof of Claim Form in order to exhaust FIRREA's administrative remedies.  (Doc. #33 at 11).  Plaintiff, therefore, believes that the Court should not accept Defendant's interpretation that exhaustion of FIRREA's administrative remedies requires more.  (Doc. #33 at 11).  Regardless of whether the Court adopts Defendant's interpretation, Plaintiff avers that she submitted substantiating documentation for her claim.  (Doc. #33 at 6; Doc. #48 at 6).  Plaintiff specifically points to the fact that she provided Defendant with the claim number for the CNA insurance claim associated with her injury.  With the claim number, Plaintiff avers that Defendant had the opportunity to retrieve any supplemental documentation it needed from CNA, including Plaintiff's entire medical record and demand letter detailing her claim.  (Doc. #48 at 6-12).  Accordingly, Plaintiff asserts that the Court must deny Defendant's Motion to Dismiss.

The record reveals that on August 2, 2013, FCBSF failed and Defendant took the institution under receivership.  (Doc. #25-1 at 2).  Although Plaintiff's counsel was in the midst of finishing a complaint to file against FCBSF for Plaintiff's personal injuries, Plaintiff's counsel failed to do so before the receivership took place.  (Doc. #34-1).  Therefore, in accordance with the post-receivership administrative framework explained above, Defendant sent Plaintiff a Notice to Present Proof of Claim Form.  (Doc. #25-2).  In the Notice, Defendant alerted Plaintiff that if she had a claim against FCBSF, she must

file a Proof of Claim Form, along with substantiating documentation, by November 6, 2013. (Doc. #25-2). In response, Plaintiff submitted the Proof of Claim Form online, providing basic details on her claim. (Doc. #25-5 at 1). However, because Plaintiff could not attach her substantiating documentation to this online Proof of Claim Form submission, she faxed the documentation. (Doc. #25-5 at 1).

This substantiating documentation facsimile submission included (1) a screenshot of Plaintiff's completed online Proof of Claim Form (Doc. #25-5 at 2-3); (2) a picture of what the Court assumes is Plaintiff's right foot (Doc. #25 at 4); (3) a letter from CNA to Plaintiff, detailing the applicable statute of limitations period for Plaintiff's claim (Doc. #25 at 5); (4) an additional letter from CNA to Plaintiff, acknowledging Plaintiff's pre-receivership *insurance* claim (Doc. #25-5 at 6); and (5) approximately fifteen pages of medical *billing* invoices (Doc. #25-5 at 7-22). After receiving Plaintiff's Proof of Claim Form and substantiating documentation, Defendant determined that Plaintiff failed to submit documentation that would allow it to evaluate the merits of her claim. (Doc. #25-1 at 3). Specifically, Plaintiff's submissions lacked any reference to a specific injury, its causation, or the causal relationship between the medical billing invoices submitted and any alleged injury. (Doc. #25-1 at 3).

As a result, Defendant sent Plaintiff a Request for Additional Information Form, requiring her to submit (1) a stated actual finite amount of her claim, (2) a copy of documentation related to her personal injury claim, and (3) a copy of other supporting documentation that she felt should be submitted for evaluation by September 23, 2013, or her claim would be disallowed. (Doc. #25-6). Plaintiff subsequently emailed Defendant, refusing to comply with its Request. (Doc. #34-1). Plaintiff first noted that she

had already submitted substantiating documentation by facsimile. (Doc. #34-1). But, to ensure Defendant received this substantiating documentation, she submitted the same documents again by certified mail. (Doc. #34-1). Second, Plaintiff asserted that submitting supplemental documentation, such as her medical records, would be "duplicative" and "unduly burdensome" as she had already provided those documents to FCBSF before the receivership. (Doc. #34-1). Third, Plaintiff declined to assign a finite amount to her claim, noting that her medical billing invoice submission "corroborated [her] claim of being in excess of over $134,627[.]49." (Doc. #34-1). Unsurprisingly, once the September 23, 2013 deadline passed, Defendant issued Plaintiff a Notice of Disallowance of Claim, denying Plaintiff's claim because it was not proven to satisfaction. (Doc. #25-7).

Based on the foregoing, the issue before the Court is whether Plaintiff's submission of the online Proof of Claim Form, along with her failure to submit the requested supplemental documentation, was sufficient to exhaust FIRREA's administrative remedies. Only one court has addressed this exact issue. *See Cipponeri v. FDIC*, No. CIV-F-09-0688 AWI DLB, 2010 WL 2573994 (E.D. Cal. June 24, 2010). Although its factual background is slightly different from the instant action, *Cipponeri* also involved a personal injury action asserted against a failed financial institution. *Id.* There, the plaintiff fell on the financial institution's property and injured his knee. *Id.* at *1. As a result of his injury, the plaintiff sued the financial institution in state court. *Id.* Shortly after the action was filed, the financial institution failed, and the FDIC took the institution under receivership. *Id.* The FDIC removed the action to federal court and required the plaintiff to submit his claim in accordance with FIRREA. *Id.*

The plaintiff complied and submitted a proof of claim form.  *Id.* But, similar to the instant action, the plaintiff's submission lacked substantiating documentation, so the FDIC requested supplemental documentation.  *Id.*  The plaintiff failed to submit any of the requested supplemental documentation.  *Id.*  The FDIC, therefore, alerted the court that it intended to file a motion to dismiss for lack of subject matter jurisdiction based on the plaintiff's failure to exhaust FIRREA's administrative remedies.  *Id.*  The plaintiff then attempted, in an untimely manner, to submit supplemental documentation.  *Id.*  But this attempt came too late as the FDIC filed its motion to dismiss and provided the plaintiff with a formal notice of disallowed claim.  *Id.*

The *Cipponeri* Court framed the issue before it as, "whether [the plaintiff's] initial submission of a filled-out Proof of Claim Form to [the] FDIC and failure to supplement it adequately exhausted [FIRREA's] administrative remedies."  *Id.* at *4.  In attempting to find a clear answer, the court noted that this issue was one of first impression.  *Id.*  FIRREA itself provided no assistance as the court failed to find any regulatory language discussing the evidentiary standard required to exhaust FIRREA's administrative remedies.  *Id.* at *5.  The court then evaluated the proof of claim form.  *Id.*  In doing so, the court noted that the form did not "ask for any documentation for a personal injury claim while asking for documentation for claims based on goods purchased by the former institution and services rendered."  *Id.*  To that end, the court concluded that because "[t]he Form did not direct him to present evidence of his personal injury claim . . . the Form [was] clearly faulty."  *Id.*

The Court's analysis, however, did not end there.  Instead, the court analyzed what it considered to be dispositive of the issue: the goal and purpose of FIRREA's

administrative exhaustion requirement. *Id.* at *6. As the court explained, "FIRREA's exhaustion scheme serves an important purpose—allowing the FDIC to perform its statutory function of promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation." *Id.* (citing *Intercontinental Travel Mktg. v. FDIC*, 45 F.3d 1278, 1285 (9th Cir. 1994)) (internal quotations omitted). In other words, "[t]he dual purpose behind requiring exhaustion of claims before suit can be filed is: (1) [t]o minimize costs to the receivership estate and to the legitimate claimants who share in the distributions from the estate, and (2) to minimize the burden on federal courts by avoiding needless litigation." *Id.* (citing Procedures To Be Used With Regard to Claims Based Upon Acts or Omissions of the Receiver, 59 Fed.Reg. 10663, 10664 (March 7, 1994)) (internal quotations omitted).

With the goal and purpose of FIRREA's administrative exhaustion requirement in mind, the court held that the plaintiff failed to exhaust FIRREA's administrative remedies. *Id.* The court focused on the fact that the plaintiff "provided no evidence whatsoever of his claim," even after the FDIC requested additional information. *Id.* The court explained that "Congress purposefully established FIRREA's rules to be strict in order to streamline the resolution of claims against defunct banks." *Id.* Without the plaintiff submitting any documentation to support his claim, the FDIC was unable to evaluate his claim fairly. Instead, the plaintiff appeared to be circumventing the administration remedy exhaustion requirement by filing minimal documentation and hoping the FDIC would quickly disallow his claim, thus allowing him to proceed in court. *Id.* Finding such a tactic to be improper, the court concluded that "the purposes of FIRREA's exhaustion requirement could not be

satisfied with [the plaintiff's] submissions," and dismissed the plaintiff's complaint for failure to exhaust FIRREA's administrative remedies.  *Id.*

Similar to *Cirpponeri*, Plaintiff's submission failed to provide Defendant with substantiating evidence that would allow it to evaluate the claim's merits.  Although Plaintiff avers that she "faxed and subsequently mailed substantial supporting documentation" to Defendant, Plaintiff's submission was, at best, minimally supportive, and certainly not substantial.  In fact, Plaintiff's submission arguably provided no evidence of her claim.   The record illustrates that the first part of Plaintiff's supporting documentation submission was a screenshot of her completed Proof of Claim Form submission. (Doc. #25-5 at 2-3).  This document fails to provide any support for her claim, and instead proves what Defendant was already aware of – that Plaintiff submitted a claim.  The second part of Plaintiff's submission was a photocopy of a picture of Plaintiff's right foot.  (Doc. #25-5 at 4).  The Court is perplexed as to how this could in any way support the claim as her injuries as alleged in the Complaint extend beyond just her foot.

The third and fourth parts of Plaintiff's submission were brief correspondence from CNA, detailing the applicable statute of limitations for Plaintiff's personal injury claim and acknowledging that it had assigned a claim number to Plaintiff's personal injury insurance claim asserted against its insured, FCBSF.  (Doc. #25-5 at 5-6).  Although this arguably put Defendant on notice that FCBSF's personal injury liability insurer was aware of Plaintiff's alleged injury, and possibly investigated it on FCBSF's behalf, it fails to provide Defendant with any information to substantiate the claim.  The fifth and final part of Plaintiff's submission was approximately seventeen pages of medical *billing* invoices. (Doc. #25-5 at 7-22).  Notably absent from this final part of Plaintiff's submission, however,

was any accompanying explanation, detailing how the billing invoices are causally related to Plaintiff's alleged injury.  Without an accompanying explanation, the medical billing invoices fail to substantiate the claim.

Plaintiff now argues that she did not supplement her original submission for two reasons.  First, Plaintiff argues that Defendant's Request for Additional Information was vague because it requested "any information [that she] wished to submit in support of her claim."  This specific portion of the Request, when read alone, could be considered vague.  But Plaintiff selectively fails to mention that the Request also asked her to provide (1) an actual finite amount of her claim and (2) documentation supporting her personal injury claim.  (Doc. #25-6).  Collectively, the three requests should have alerted Plaintiff that Defendant needed supplemental documentation in order to evaluate her claim properly.  Regardless of whether Plaintiff believed the Request to be vague, she failed to submit *any* supplemental documentation; nor did she seek clarification from Defendant.

Second, Plaintiff directs the Court's attention to the fact that before Defendant took FCBSF under receivership, she provided CNA with hundreds of pages of documents that substantiated her claim.  Plaintiff argues that when this fact is viewed in conjunction with the fact that her claim submission provided Defendant with information that would enable it to identify and seek that substantiating documentation from CNA itself, Defendant had access to more than enough substantiating documentation to evaluate the claim.  Plaintiff's reliance on her pre-receivership document submission to CNA is misplaced.  Even if Plaintiff submitted thousands of detailed, supporting documents to CNA before the receivership took place, this does not satisfy FIRREA's administrative exhaustion requirement.  *See Bank of America, N.A. v. F.D.I.C.*, 908 F.Supp.2d 60, 82 (D.D.C. 2012)

("A claimant may not exhaust its administrative remedies through communications outside its [P]roof of [C]laim.") (citations omitted).  Not to mention, Plaintiff fails to provide the Court with any precedent, and the Court is aware of none, holding that the FDIC has a duty to seek documents from a private insurance company when a claimant merely provides an insurance claim number to substantiate her claim.

In addition, Plaintiff attempts to evade FIRREA's administrative exhaustion requirement by citing to an Eleventh Circuit case for the proposition that "*pre*-FDIC Receivership claims against a failed bank do not need to be re-filed with the FDIC." (Doc. #33 at 5 (citing *Aguilar v. F.D.I.C.*, 63 F.3d 1059 (11th Cir. 1995)) (emphasis in original). As Plaintiff notes, "[i]nstead, the FDIC may ask the [district court] for a stay to allow it to investigate and respond to a pre-Receivership claim[;] . . . [but] [i]f the FDIC does not ask for such stay, it waives any claim of failure to exhaust administrative remedies." (Doc. #33 at 5).  Regardless of whether Plaintiff's interpretation of *Aguilar* is correct, the Court finds that Plaintiff's argument suffers from a fatal flaw: Plaintiff asserted a *post*-receivership, not a pre-receivership, claim.  *Cf. Aguilar*, 63 F.3d at 1062 (defining pre-receivership claims as those "[w]here a lawsuit against a financial institution is pending when the FDIC is appointed receiver and the FDIC timely insists on the use of its administrative process").  It is well established that a claimant must exhaust FIRREA's administrative remedies before bringing an action involving a post-receivership claim. *Damiano*, 104 F.3d at 333.

Finally, Plaintiff argues that Defendant waived the FIRREA administrative remedy exhaustion requirement.  In the Notice of Disallowance of Claim, Defendant stated that if Plaintiff disagreed with the disallowance, she had the right to file a lawsuit on her claim

within 60 days of the Notice.  In response, Plaintiff timely filed the instant action.  Plaintiff now asserts that the fact that Defendant included this 60-day language in its Notice and the fact that she complied with the deadline illustrates that Defendant waived FIRREA's administrative remedy exhaustion requirement.  The Court disagrees.

The Eleventh Circuit has stated, "[i]n ordinary circumstances, the parties to a challenge to administrative action under FIRREA may *not* waive conditions to subject matter jurisdiction."[2]  *Paul v. F.D.I.C., 91 F.3d 110, 112 (11th Cir. 1996)* (citations omitted; emphasis added).  This understanding is not unique to the Eleventh Circuit.  *See Resolution Trust Corp. v. W.W. Dev. & Mgmt., 73 F.3d 1298, 1302 (3rd Cir. 1996)* (noting the FDIC did not waive condition to subject matter jurisdiction by sending claimant a Notice specifying that she may appeal within 60 days); *Brady Dev. Co. v. Resolution Trust Corp., 14 F.3d 998, 1007 (4th Cir. 1994)* (holding that "[t]he doctrines of waiver and estoppel do not apply to [FIRREA] subject matter jurisdiction determinations").  Notably, Plaintiff fails to present any contradicting precedent, and the Court is aware of none, holding that the FDIC may waive subject matter jurisdiction by sending a Notice specifying that the claimant has 60 days to file suit to appeal the decision.  So, Plaintiff's argument must fail.

Based on the foregoing, the Court finds that Plaintiff failed to exhaust FIRREA's administrative remedies.  Indeed, it appears that Plaintiff was in discussions with both

---

[2] The only special circumstance in which the Eleventh Circuit noted that the FDIC "could . . . cure problems of subject matter jurisdiction" involves the FDIC having "discretion to hear claims filed after the filing deadline if the claimant did not have notice of the identity of the receiver before the deadline."  *Paul, 91 F.3d at 112*.  But because Plaintiff had notice that Defendant was acting as the receiver before the claim deadline, this special circumstance is inapplicable to the instant action.

CNA and FCBSF regarding her personal injury insurance claim[3] prior to Defendant taking FCBSF under receivership.  During these discussions, Plaintiff likely provided CNA with documentation that supported her insurance claim.  Therefore, when Defendant took FCBSF under receivership and asked Plaintiff to provide proof of her FIRREA claim in the form of substantiating documentation, she likely believed that submitting the same substantiating documents that she had previously submitted to CNA to Defendant again would be "unduly burdensome" and "duplicative."  Unfortunately for Plaintiff, however, her prior substantiating documentation submission to CNA essentially became moot when FCBSF failed.

Once FCBSF failed, and Defendant took the institution under receivership, Plaintiff's potential right to recovery from FCBSF for her injuries became subject to FIRREA's administrative claim framework.  Accordingly, Plaintiff was required to submit a Proof of Claim Form *and* documentation that substantiated her claim, or, at the least, granted Defendant the opportunity to evaluate its merits.  Plaintiff failed to do so. She instead ignored Defendant's subsequent attempt to secure substantiating documentation. Plaintiff provided two reasons as to why she ignored Defendant's Request for Additional Information, which the Court has dismissed as unpersuasive above.  An extensive review of the record reveals yet a third possible explanation: Plaintiff was eager to file an action in Florida state court for her injuries.  In fact, in the cover letter accompanying the facsimile portion of her original claim submission, Plaintiff explicitly sought "authorization to pursue filing a complaint. . . ."  ([Doc. #25-5 at 1](#)).  In her email response to Defendant's Request for Additional Information, Plaintiff noted that she was "await[ing] [Defendant's] position

---

[3] Once again, the Court notes that Plaintiff did not file an action before Defendant took FCBSF under receivership; thus, Plaintiff's claim is a post-receivership claim.

as to [her] proceeding with the filing a lawsuit [sic] against [FCBSF] for bodily injuries in Lee County Florida Circuit Court [sic]."   (Doc. #34-1).

Plaintiff's failure to comply with Defendant's Request for Additional Information, when combined with her eagerness to proceed with filing a complaint in state court, indicates that Plaintiff sought to bypass FIRREA's administrative remedies process and proceed directly in court.  Such a tactic is improper.  As the *Cipponeri* Court noted, "[o]ther claimants . . . generally comply with [the] FDIC's requests for supplemental information." *Cipponeri*, 2010 WL 2573994, at *6 (citing *Nants v. FDIC*, 864 F.Supp. 1211, 1216 (S.D. Fla. 1994), as an example where the claimant supplemented his substantiating documentation when the FDIC requested that he do so).  The biggest detriment to Plaintiff's argument that the Court should deny this Motion is the fact that Plaintiff failed to provide a single document in response to Defendant's Request for Additional Information.  Without a single supplemental document, however, Defendant was unable to perform the primary purpose of FIRREA's administrative framework – "promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation."  *Intercontinental Travel Mktg.*, 45 F.3d at 1285. Consequently, Plaintiff failed to exhaust FIRREA's administrative remedies, and Defendant's Motion to Dismiss must be granted.

### The Parties' Cross-Motions for Rule 11 Sanctions

#### Legal Standard

The purpose of Federal Rule of Civil Procedure 11 sanctions is to reduce frivolous claims, defenses, or motions and to deter costly meritless maneuvers. *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001).  Rule 11 requires district courts to impose

sanctions, after notice and a reasonable opportunity to respond, where an attorney or party submits a pleading to the court that (1) is not well-grounded in fact and therefore has no reasonable factual basis; (2) is not legally tenable; or (3) is submitted in bad faith for an improper purpose.  *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002) (citing Fed. R. Civ. P. 11(b)).  Rule 11 incorporates a subjective standard whereby the court determines whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified. *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003).

When testing conduct under Rule 11, a court may use an objective standard and examine the reasonableness of the conduct under the circumstances and what was reasonable to believe at the time the pleading was submitted.  *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, No. 03-cv-2671-T-30MAP, 2006 WL 4792784 *2 (M.D. Fla. Sept. 14, 2006) (citing *Baker v. Alderman*, 158 F. 3d 516, 524 (11th Cir. 1998)).  "In making this determination a two-step inquiry is required: (1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Custom Mfg.*, 2006 WL 4792784 at *2. Sanctions are warranted when a party exhibits a "deliberate indifference to obvious facts, but not when the party's evidence to support a claim is 'merely weak.'" *Riccard*, 307 F.3d at 1294 (citing *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)).

## Discussion

Plaintiff moves for Rule 11 sanctions against Defendant on the basis that its Motion to Dismiss or Motion for Summary Judgment (Doc. #25) "is frivolous, contains false representations of facts, scurrilous and irrelevant allegations which should not be entered

into the [p]ublic [r]ecords, fails to disclose material facts such as the relationship between CNA and the FDIC during the180 [sic] day [c]laims [e]xamination period in question[,] and appears to have been filled solely to harass Plaintiff and to impose litigation costs upon her." (Doc. #49 at 1).   Plaintiff continues by noting that she requested Defendant to withdrawal its Motion, but that Defendant refused and violated Rule 11, warranting "an appropriate sanction for Defendant's submission of a Motion designed to needlessly increase the cost of litigation." (Doc. #49 at 2).   As a result, Plaintiff now seeks recovery of the costs she expended responding to Defendant's Motion, which Plaintiff avers is approximately $10,200.  (Doc. #49 at 2-3).

In response, Defendant filed its own Motion for Rule 11 Sanctions, asserting that sanctions are warranted because "Plaintiff opposed Defendant's Motion to Dismiss or Motion for Summary Judgment [] by submitting a false affidavit, and misleading arguments [], as clearly shown by Defendant's [R]eply. . . ." (Doc. #54 at 1).  As Defendant explains, its Reply "established that the documents submitted by Plaintiff in opposition to [its] Motion contradicted Plaintiff's own affidavit. . . ." (Doc. #54 at 3).  Defendant attempts to support this contention by directing the Court's attention to Plaintiff's alleged misleading interpretations of the law and alleged misleading factual contentions that lack support. (Doc. #54 at 3-8).  Based on these alleged acts, Defendant seeks an award of $9,416.05 from the Court to cover its attorney's fees.  (Doc. #54 at 9).

Here, the Court finds that sanctions are not warranted.  A review of the docket reveals that neither Defendant nor Plaintiff submitted pleadings to the Court that (1) were not well-grounded in fact and had no reasonable factual basis; (2) were not legally tenable; or (3) were submitted in bad faith for an improper purpose.  Indeed, it appears

that the highly-contested issue asserted in the Motion to Dismiss or Motion for Summary Judgment was one of first impression for not only this district, but also this circuit.  In asserting and defending the Motion, both Parties provided the Court with well-grounded, supported facts and legally-tenable arguments, asserted for a good-faith purpose. Accordingly, because there is no basis warranting sanctions at this time, Plaintiff's Motion for Sanctions (Doc. #49) and Defendant's Motion for Sanctions (Doc. #54) must be denied.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss (Doc. #25) is **GRANTED**.

2. Plaintiff's Motion for Sanctions (Doc. #49) and Defendant's Motion for Sanctions (Doc. #54) are **DENIED.**

3. All other pending motions are **DENIED** as **MOOT**.

4. The Clerk is directed to **CLOSE** this action.

**DONE** and **ORDERED** in Fort Myers, Florida, this 20th day of January, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record